JOAQUINA BATLLE DE VILARÓ, Plaintiff and Appellant; v. SERGIO TORRUELLA CORTADA, Defendant and Appellee.

No. 4330. Argued April 13, 1928.---Decided February 21, 1929.

*Tous Soto & Zapater* for the appellant.   *José A. Poventud* and *Alberto S. Poventud* for the appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

The plaintiff in this case has presented three causes of action and has alleged substantially the following: That in 1905 the heirs of Braulio Fernández were the owners of several parcels of land, described and sketched in a certain plan, of which one contained 13.83 acres, another 23.13 acres, another 3.25 acres, another 4.13 acres and another 36.94 acres, with some gravel patches whose measurements are given, and of which four parcels make up a total area of 38.75 acres, six other parcels an area of 42.60 acres, and another marked No. 11 contains 14 acres; that the ownership and possession of the properties were conveyed to Griffo & Co. who consolidated the parcels marked 1, 2, 3 and 4 into one property which was recorded in the registry of property of Ponce under number 6351, and the parcels marked 5, 6, 7, 8, 9 and 10 into another property which was recorded in the same registry under number 6352, as described in the complaint; that the tract marked No. 11 in the complaint was not included in those groups; that Alejandro Franceschi bought the

properties Nos. 6351 and 6352 from Griffo & Co. and sold them on September 27, 1923, to Sergio Torruella; that when the properties were bought by Franceschi and later by Torruella they were under lease to the Bernal Estate for a term to expire on June 14, 1931, and neither Franceschi nor Torruella took material possession of properties Nos. 6351 and 6352 whose possession was held first by the Bernal Estate and later by its successor, the South Porto Rico Sugar Company, who also held possession of tract No. 11 which was never alienated by Griffo & Co., its owners, until January 3, 1925, when it was sold to the plaintiff by the marshal of the District Court of Ponce under a writ of execution in a mortgage foreclosure proceeding and is at present recorded in favor of the plaintiff by virtue of a forced sale deed of April 25, 1925; that since the date of his purchase of the said properties the defendant has been receiving from the South Porto Rico Sugar Company the rent of tract No. 11 owned by the plaintiff, the defendant alleging that that tract belongs to him as a part of property No. 6351. As a second cause of action it was alleged, after repeating the previous allegations, that the plaintiff demanded of the defendant the acknowledgment of her ownership of tract No. 11 and the defendant agreed that an identification of the said tract be made by surveyor Roig from the deeds and plans for the purpose of determining whether it was included among those leased to the South Porto Rico Sugar Co. as belonging to the defendant, and that the surveyor proceeded to measure and survey properties A (6351), B (6352) and No. 11, with the result, as stated by him, that the defendant owned certain lands marked in the plan, except a parcel of 14.90 acres, and that the defendant has refused to accept the result of that survey and to acknowledge the ownership of that tract by the plaintiff. As a third cause of action, after repeating the previous allegations, it was alleged that the defendant had received the rent for tract No. 11 since September 27,

1923, at the rate of $16.20 monthly, to the detriment of the plaintiff.

It appears that defendant Torruella gave notice in warranty to Alejandro Franceschi, who filed a demurrer on the ground of lack of facts sufficient to determine a cause of action, and Torruella demurred to the complaint as a whole on the grounds of misjoinder of actions and lack of facts sufficient to constitute a cause of action, to the first cause of action that of defect of parties defendant, that of lack of facts (which he also extended to the other causes of action) and that of ambiguity, adding as to the third cause that of prescription.

On motion of the plaintiff a day was set for hearing the demurrers of Torruella and Franceschi. On May 9, 1927, the judge sustained the demurrers of both defendants and allowed time for amendments.

On May 17, 1927, the plaintiff moved that the court render final judgment so that she might carry out her intention of appealing to the Supreme Court from the order of the district court sustaining the demurrers. On May 17, 1927, the District Court of Ponce rendered judgment dismissing the complaint and imposing the costs on the plaintiff.

The plaintiff instituted her appeal, as appears on pages 44 and 45 of the record, in the following manner:

"Notice of appeal.—Messrs. José A. and Alberto S. Poventud, attorneys of record for the defendant.—The clerk of the district court of Ponce, P. R.—Take notice that we appeal to the Supreme Court of Porto Rico from the judgment rendered by the district court for the judicial district of Ponce, P. R. on May 18, 1927, dismissing the complaint in the present case.

"Ponce, P. R., June 10, 1927.—José Tous Soto & F. Zapater (signed by F. Zapater), attorneys for the plaintiff.

"Notified with copy on this 10th day of June, 1927, José A. Poventud and Alberto Poventud, attorneys for the defendant."

When appellee Torruella presented his brief in this court a motion was made for the dismissal of the appeal, and this is a matter which, logically, should have first consideration.

The motion to dismiss is based on the following:

(a) The notice of appeal was not addressed to Alejandro Franceschi who was called as warrantor and is an adverse party.

(b) The appellant can not appeal from the judgment rendered on her own motion.

Alejandro Franceschi was called to defend the title as warrantor. He appeared and demurred to the complaint.

Although he had called Franceschi in warranty, Torruella appeared also to defend his title and demurred. He contends that he had the right to appear and become a party to the suit.

It was alleged in the complaint that parcels Nos. 1, 2, 3 and 4 were grouped or consolidated in order to form the property recorded in the registry of property under number 6351; that parcels Nos. 5, 6, 7, 8, 9 and 10 were consolidated to form the property recorded in the registry under number 6352, and that the parcel appearing in the plan under letter A is the same that was marked No. 11 in the third averment of the complaint and was not included in either of the two groups mentioned. It was alleged that Franceschi acquired the consolidated properties numbered 6351 and 6352 and later sold them to Torruella on September 27, 1923; that tract No. 11 was never alienated by its owner, Griffo & Co., until January 3, 1925, when the marshal of the District Court of Ponce sold it under foreclosure proceedings to the plaintiff and mortgagee who has it recorded in her name in the registry by virtue of the forced sale deed of April 25, 1925, and that the defendant, alleging that he is the owner of that property No. 11 as a part of one of the consolidated properties, is receiving the rent for it.

From the result of the pleadings there was no reason for giving notice in warranty to Franceschi who is not said to have ever sold property No. 11 to Torruella. Torruella could not be dispossessed of anything sold to him by Franceschi, as shown by the pleadings.

But it can not be maintained that the pleadings are the sole standard for calling the vendor as warrantor. It would then be sufficient not to allege from whom the defendant acquired, or appeared to have acquired, for the question to arise of whether or not the notice in warranty could be given. It is most probable that in a case containing the pleadings which we have transcribed in condensed form the calling in warranty is unnecessary or redundant because the pleadings appear to be clear. But it is true also that although the plaintiff may allege that the property was not sold by a particular person, the defendant may have acquired it from that person and he has no other opportunity for calling his vendor in warranty than that prescribed by section 1385 of the Civil Code, that is, within the time allowed him for answering the complaint.

Once the person called as warrantor has appeared and pleaded, the original defendant has covered his defense. His title is the title of the defendant in eviction and in that sense he defends it. His right is safe, for if he should be dispossessed his vendor is responsible to him. His appearance and his answer, though not barred by statute, seem to be redundant in the action. The quotation from Manresa (vol. 10, p. 199, of his Commentaries) submitted by the appellee seems to support what has just been said.

". . . . . if the vendor appears and sides with the purchaser they will fight together; if the action is won his injury will be confined to the costs should they not be imposed on the other party; if the action is lost and the eviction takes place, as the suit for eviction was commenced with the summons, the vendor is bound to warranty on the terms already stated. If the vendor failed to appear in the proper time and manner, the period in which to answer the complaint shall continue with regard to the purchaser; the proceedings shall be continued against him, but in case of eviction he shall be entitled to the warranty. . . . ."

The legal idea is made clear by these words. The purchaser is entitled to have delivered to him the thing pur-

chased and that it be the same thing which he purchased, with a clear title and warranty against latent material and legal defects. If the purchaser is dispossessed of what he purchased and defeated in court by final judgment by reason of a title prior to the purchase, the vendor clearly failed in the legal delivery of the thing and must be liable therefor. But it is not the intention of the law to leave the person on whom that liability is to be imposed without an opportunity to defend the title conveyed by him; hence the procedure prescribed by the Civil Code.

It can be seen readily that the relation created in warranty in case of eviction is really one between the purchaser and the seller and that the question of who is going to defend the title is of no great importance to the plaintiff. But the juridical conclusion can not be avoided that the person called in warranty has an interest in the action, since the liabilities therefrom, if the plaintiff should be right, will fall on him. He is an adverse party to the plaintiff.

It is contended by the appellant that the court did not consider in its judgment the demurrer of Franceschi. There is no doubt that one of the parties with a perfect right to move for setting a hearing on that demurrer seasonably did so and for the same day set for the hearing on the other demurrer. The demurrer of Franceschi was on the ground of lack of facts sufficient to determine a cause of action, and the court ruled that the complaint did not state facts sufficient to determine a cause of action, the objection being common to the two defendants.

We consider unquestionable the right of the warrantor to demur and to avail himself of any other pleading that could be presented by the original defendant. There is no statute which limits him in that right and, on the contrary, the case of a voluntary intervenor who can offer all kinds of pleadings is decidedly against the theory which the appellant seems to defend in this respect.

Was Franceschi given notice of the appeal?

This question is argued by the appellee in detail. But it should be remembered that attorney Cristino R. Colón presented a writing in which he affirms that he was engaged by Franceschi to represent him in this case, that he was notified of the appeal and that through inadvertence he did not endorse its receipt at the foot of the notice. The date of this statement is of no importance. The attorney for Franceschi admits that he was notified and in our opinion that is sufficient. Proof of its service may not appear in the notice, but this is distinct from failure to give notice. In this respect defendant Torruella can not require more than could have been demanded by Franceschi as an interested party. This is apart from the affidavit of the appellant, which is sufficient proof of the notice.

The appellee contends that the appellant can not attack the judgment which was rendered on her own motion.

We do not agree. After the demurrers were sustained the plaintiff moved the court to render judgment so that she might appeal to this court. It was logical. She could not appeal from the ruling on the demurrers, and it was only after a judgment had been rendered in conformity with the ruling on the demurrers that she could appeal. Was it necessary for her to proceed with the litigation by pleading, amending a complaint which in her opinion should not be amended and perhaps creating thereby different or conflicting situations with those which she sought to create?

The appellee cites the cases of *Vega* v. *Rodríguez*, 17 P. R.R. 237; *Capó* v. *Capó*, 17 P.R.R. 241; *Lamb* v. *Fantauzzi*, 17 P.R.R. 291; and *Torres* v. *Calaf*, 17 P.R.R. 585. It was held in the first three that after a ruling on demurrer in favor of the defendant he is entitled to a judgment in his favor unless leave to amend is granted. But it was not held that the defendant is the only party having the right to move for judgment. And in the case of *Torres* v. *Calaf* the holding was adverse to the theory of the appellee, for it was said there that for rulings on demurrers to terminate a case and

be taken cognizance of by this court on appeal it is required that they be entered as judgments. The cases cited with relation to orders on motions of the parties, dismissals, etc., do not produce the effect which the appellant attributes to them.

Besides, we call attention to the form in which the judgment herein was rendered:

"The Court, in conformity with that motion, and on the grounds of its ruling of the 9th of May sustaining the demurrers filed in this case, which ruling is made part of this judgment, dismisses the complaint in all of its parts with costs on the plaintiff."

The motion to dismiss must be denied.

Let us consider and decide the appeal on its merits.

The first assignment of error of the appellant reads as follows:

"The District Court erred in sustaining the demurrer on the ground of misjoinder of actions."

It appears from the complaint that the plaintiff seeks to be declared the owner of property No. 11 and therefore of its rents and profits and that both be delivered to her. As a second cause of action it is alleged that the plaintiff asked the defendant to acknowledge her ownership of that property and that it was agreed to make a survey, plot and identification of various properties, among them the No. 11, and that the parties would abide by the result thereof, and that after such operations had been carried out the defendant refused to comply with his promise to acknowledge the plaintiff's ownership.

The objection was to the misjoinder of the action to recover the property and the fruits received and to be received and the action for the performance of contract, since the former is essentially *ex delicto* and the latter *ex contractu*.

A standard for the joinder of actions is found in section 104 of the Code of Civil Procedure, subdivision 8 of which reads as follows:

"8. The causes of action so united must all belong to one only of these classes, and must affect all the parties to the action, and not require different places of trial, and must be separately stated; but an action for malicious arrest and prosecution, or either of them, may be united with an action for either an injury to the character or to the person."

It is true that it was said in *Siaca* v. *Brunet*, 13 P.R.R. 153, cited by the appellee, that all of the actions joined should belong to the same class; however, that expression was not made as a holding of the court, but as a reproduction of section 104 of the Code of Civil Procedure. In that case it was urged that two causes of action were stated in the complaint and the court held as stated because they should have been separately and distinctly stated, and this was not done.

Stronger authority is found in *Stark* v. *Wellman*, 96 Cal. 400: *McCarty* v. *Fremont*, 23 Cal. 197, and *Cosgrove* v. *Fisk*, 90 Cal. 75. In *McCarty* v. *Fremont* three causes of action had been joined, injury to personal property, injury to real property and injury to the person, and they were not pleaded separately which was in violation of the statute. In *Cosgrove* v. *Fisk* the causes of action joined were that for costs in a suit brought against the defendant for the performance of a contract, another based on fraud, malice and oppression and another arising from the violation of a security contract, which evidently could not be joined. In *Stark* v. *Wellman* the causes joined were one for liability for negligence in the care of a certain sum and for failure to refund, and another charging the defendant with having appropriated the said sum to his own use.

In arguing this assignment the appellant contends that in reality the first and second causes of action are one and the same pleaded in distinct form, that is, the action of revendication arising from section 354 of the Civil Code which gives to the owner the right of action against the holder and possessor of the thing in order to recover it, and that that action has been stated in different counts or forms which

have been called causes of action, whereas they are really different manners of stating the same cause. She first cites the cases of *Kyle* v. *Craig*, 125 Cal. 107, and *Murray* v. *Murray*, 115 Cal. 266, and from them the juridical doctrine that the mistaken designation of a part of the complaint as a separate cause of action should not be considered as an error not affecting the substantial rights of the parties.

In *Murray* v. *Murray* a single cause of action was pleaded and the fact that a certain conveyance of property was fraudulent was considered erroneous as a "separate and second cause of action." The case of *Kyle* v. *Craig* involved the effectiveness of a trust on personal and real property and it was held that no prejudice was caused to the defendant by setting up separately the two causes of action, one for personal property and another for real property.

The reasoning in *Jones* v. *Steamship Cortes*, 17 Cal. 499, 79 Am. Dec. 142, seems stronger. It was said there:

"We have but one form of action, and nothing more is required than a statement in ordinary language of the facts relied upon for a recovery. The statute makes no distinction in matters of form between actions of contract and those of tort, and relief is administered without reference to the technical and artificial rules of the common law upon the subject. Different causes of action may be united in the same complaint, and the only restrictions upon the pleader in this respect are those imposed by the statute. Our system of pleading is formed upon the model of the civil law, and one of its principal objects is to discourage protracted and vexatious litigation. It is the duty of the Courts to assist as far as possible in the accomplishment of this object, and it should not be frittered away by the application of rules which have no legitimate connection with the system. The provisions for avoiding a multiplicity of suits are to be liberally and beneficially construed, and we see no reason why all matters arising from and constituting part of the same transaction should not be litigated and determined in the same action. Causes of complaint differing in their nature, and having no connection with each other, cannot be united, but the object of the rule is to prevent the confusion and embarrassment which would necessarily result from the union of diverse and incongruous matters, and it has no applica-

tion to a case embracing a variety of circumstances so connected as to constitute but one transaction."

That two causes of action may not be joined it is necessary that they should differ in their nature and have no connection with each other. The rule is not so rigid as it appears and does not· deviate from the procedural logic.

In *Asilo de Damas* v. *Diana,* 18 P.R.R. 752, a liberal application of the rule was made. The case of *Ortiz* v. *Texidor,* 27 P.R.R. 125, treats of the difference between legal remedies and causes of action. We transcribe the following from the syllabus:

"Causes of action are clearly distinguishable from the remedial rights to which they give rise, and the same cause of action may give rise to several remedial rights. A complaint may, without stating more than one independent cause of action, require a determination of various matters as incidental to the principal relief demanded and will be regarded as stating but one cause of action although it may pray for different and varying forms of relief, where they are all germane to the vindication of a single primary right. Thus, in a suit for specific performance of a contract to convey land the complaint states but a single cause of action, although it seeks both specific performance of the contract and a recovery for rents and profits."

The trial court committed the error assigned.

The second assignment of error reads as follows:

"The Court erred in holding that there was a misjoinder of parties in the complaint because the lessee South Porto Rico Sugar Co. was not made a party defendant in the action of revendication."

In arguing this assignment the parties raise distinct questions, some of which are of real interest.

The appellant brings up the question of the difference between the action of revendication and that of ejectment and the error of the court in considering these actions as one and the same. As a consequence of that argument the other party cites the construction of certain sections of the Civil Code in conformity with the doctrine of this court and of the Supreme Court of Spain.

Section 354 of the Civil Code has been cited and its last paragraph reads as follows:

"The owner holds a right of action against the holder and the possessor of the thing in order to recover it."

And with reference to this section the opinion of this and other courts in various cases are cited, among them the case of *Emmanuel* v. *People*, 7 P.R.R. 216, in which it was said that for the action of ejectment to be effective it must be prosecuted against the holder or possessor of the thing sought to be recovered, besides identifying the thing and its ownership, and that doctrine appears in *Ledesma* v. *González*, 1 D. P.R. 420. Also the case of *Marix* v. *Acevedo*, XII P. R. Fed. Rep. 139, in which it is held that the action of revendication and that of ejectment are substantially the same.

The Civil Code has recognized and regulated the right of ownership and section 354 begins with its definition as the right by which a thing belongs to some one in particular, to the exclusion of all other persons. Under this definition, with the characteristic note of "to the exclusion of all other persons," it is perfectly clear that the character of owner is not given contradictorily to two or more persons. As between two or more persons with opposed interests in the ownership of a thing one of them, and only one, is the owner. It may happen that although one person may have the right of ownership, a complex right embodying the right to use, enjoy, dispose of and convey, another person may possess, or withhold in another manner, the thing of which he is not the owner. Hence, in treating of the action of revendication the code and the jurisprudence always speak of the possible defendant as the *holder* or *possessor* of the thing for the obvious reason that they can not give him another name, as they can not call him the owner. Were he the owner, the action of revendication would not lie, since there would be united in him the right of ownership and the fact and perhaps the right of possessor. But in any case we consider it very

difficult to stretch that section and the jurisprudence so as to convert a lessee into a defendant in an action of revendication because a lessee is only entitled in law to the temporal and transitory use and enjoyment of the thing leased and even then by grant from the supposed owner who as such has power to convey the prerogatives of ownership. It is well to bear in mind in this connection and with regard to the lease that the Civil Code by its sections 1462 and 1463 establishes the difference between the rights of the owner and those of the lessee as follows:

"Sec. 1462. The lessee is obliged to give notice to the owner with the least possible delay of any usurpation or injurious alteration which any other person may have made or openly is preparing to make to the thing leased.

"He is also obliged to give notice with the same urgency to the owner of the necessity of all the repairs included in number 2 of section 1547.

"In either case the lessee shall be liable for the losses and damages which, by reason of his negligence, may be caused to the owner.

"Sec. 1463. The lessor shall not be obliged to answer for the mere fact of a trespass made by a third person in the use of the estate leased, but the lessee shall have a direct action against the trespasser."

As regards the demurrer which by being sustained gave rise to this assignment of error, the problem to be solved is only whether or not the South Porto Rico Sugar Co., the lessee, is a proper and necessary party to this action.

We can not hold that the right given by section 1474 of the Civil Code to the purchaser of a leased property to terminate the lease is absolute in a case of this nature. As that right is exceptional, inasmuch as it goes against the effectiveness of a lease contract, it can not be construed or applied otherwise than strictly, and it can be granted only to one who acquires by purchase.

The appellant alleges that she has acknowledged the lease of the parcel of land in question since the time when it belonged to Griffo & Co. in favor of the Bernal Estate, the

predecessor in interest of the South Porto Rico Sugar Co., and that her action could in no way affect the lessee and therefore the lessee is not an interested party.

Allegation No. 8, the first cause of action of the complaint, reads as follows:

"That both when the said properties were purchased by Alejandro Franceschi and when they were purchased by the defendant they were subject to the lease given by Griffo & Co. to the Bernal Estate in deed No. 28 of June 27, 1911, for a term to expire on June 14, 1931, and therefore neither of the said purchasers took material possession of properties A (6351) and B (6352)."

Allegation No. 9 of the same cause of action is as follows:

"That by virtue of the said lease The Bernal Estate and afterwards on July 9, 1917, its successor in interest, The South Porto Rico Sugar Co., took possession of properties A (6351) and B (6352) and also of parcel No. 11 which was never alienated by its owner and possessor, Griffo & Co., until January 3, 1925, when it was sold by the marshal of the district court of Ponce under execution in a foreclosure proceeding to the plaintiff and mortgagee who had it recorded in her name in the registry of property and is still so recorded by virtue of forced sale deed No. 32 executed before notary José Tous Soto on April 25, 1925."

The properties referred to in allegation No. 8 are those marked A (6351) and B (6352) in which was not included, as appears from allegation No. 6, the first cause of action, parcel No. 11 described in the same complaint. We see no clear admission that that property had been leased by Griffo & Co.

But apart from the manner in which the issue has been joined, there is another matter which we consider very important for the determination of this assignment.

In the light of the facts, is there any cause of action against the lessee? If there were in law, there would be no doubt about its status as a necessary and proper party. If there is none, it can not be disputed that it would be improper and inadmissible to make it a party to the action.

What allegations could be made against the lessee? In an action of revendication in which the matters to be discussed and determined are the title and the ownership there is no place for any allegation against the lessee, the possessor who derives the use and enjoyment of the thing from the owner who is bound to defend his title thereto without any intervention in his behalf by the lessee.

The appellant seems justified in stating and invoking the difference between an action of ejectment and an action of revendication. Their spheres of action are different. Ejectment is principally an action of possession and the possessory right is perhaps sometimes sufficient upon which to base it. An action of revendication involves the right to the title and to the full ownership, and in this action the lessee is not a necessary or proper party.

The second error assigned was committed.

The third assignment of error reads as follows:

"The court erred in holding that in its first, second and third causes of action the complaint did not adduce facts sufficient to constitute a cause of action."

It becomes necessary to consider separately the various causes of action and the decision on each of them.

It is said in allegation 9 of the first cause of action that parcel No. 11 was never alienated by its owner, Griffo & Co., until January 3, 1925, when it was sold by the marshal of the District Court of Ponce under execution in a foreclosure proceeding to the plaintiff and mortgagee who recorded it in her name in the registry of property and still has it so recorded under forced sale deed No. 32 executed before notary José Tous Soto on April 25, 1925.

The ground of the demurrer to this cause of action is that the title asserted by the plaintiff is derived from a judicial proceeding and, according to section 126 of the Code of Civil Procedure, in pleading a judgment one of these three requisites must be fulfilled: (a) to state the facts conferring

jurisdiction, (*b*) to state that the judgment was duly rendered, or (*c*) to transcribe in the complaint the judgment referred to.

In support of that contention the appellee cites the case of *Candal* v. *Pierluisi,* 28 P.R.R. 564, which we do not find to be apposite for the reason that in the case cited plaintiff Candal sought to recover a judgment credit and that is not the case here. In the present case the title is not the judgment rendered in a certain action, but the forced sale made by the marshal and the deed of sale as title in a more restricted sense. The fact that in a summary mortgage proceeding there is no real judgment would not be a serious obstacle if there were a determination which might be itself the alleged title, for the two terms judgment and determination are mentioned in section 126 of the Code of Civil Procedure; nor would it be a matter of grave consideration whether or not a third person who was not a party to the foreclosure proceeding could attack the jurisdiction of the court, as we believe he can, though in a case of this kind it would be rather a matter of defense than of demurrer. The important point here is that the title asserted is the forced sale deed, and that would be sufficient for not complying with the requirements of the statute cited.

As regards the second cause of action and the demurrer referred to therein, we find that the parties have argued their contentions in detail and perhaps somewhat profusely, thus causing a confusion difficult to adjust.

In arguing the demurrer on the ground of misjoinder of actions the appellant contended that—

"It happens that the action of revendication is stated in two different counts or distinct forms which have been called *causes of action,* when they are really forms, ways or manners of stating the same cause of action. Properly speaking, the so-called second cause of action is nothing else than a statement of the admissions by the defendant of the facts alleged by the plaintiff, the acknowledgment of his ownership of the parcel of land claimed, the admission that parcel No. 11 of the second count is parcel A of the plan drawn by

surveyor Valls in April, 1905, when that parcel and those belonging at present to the defendant were owned by the heirs of Braulio Fernández who had that plan made. The so-called second cause might be open to the objection that it contains evidential or probatory matter, but this is not the question before the court.''

The appellee adopts these declarations as strong argument in support of his demurrer. Really if those allegations are limited to making evident the admissions of the defendant, no matter the occasion of using them, they do not constitute for the present a ground for a cause of action. And if they are another form of stating the same first cause of action, they can not and should not be stated as a distinct cause of action, but as a second cause of action; and if. the facts alleged therein have a different meaning from that indicated before, the allegations would be those of the existence of a . compromise, and then, in accordance with section 1722 of the Civil Code and the jurisprudence of *Mas* v. *Llona,* 31 P.R.R. 28, lack of the essential allegation that the compromise was made in writing. It is true that section 1245 of the Civil Code prescribes that contracts are binding, whatever the form of their execution, provided the essential conditions required for their validity exist. But notwithstanding this adhesion of the code to the spiritualistic principles of contracting, the legislators have been compelled for various reasons to adopt a middleground in regard to some contracts. Thus, it is required in a marriage contract that it be set out in a public instrument, except as provided in section 1291; and in a partnership (section 1569) when real property is contributed to it a public instrument is required as the manner of forming it. In mortgages recorded instruments are indispensable.

From these considerations it becomes necessary to hold that the demurrer referred to was ruled on in this particular in accordance with the law and the jurisprudence.

In regard to the effect of the demurrer on the third cause of action, that demurrer was based on failure to allege that

the defendant knew of the existence of a defect in his title which invalidated it.

The appellee bases his demurrer on sections 436, 437 and 453 of the Civil Code, on sections 134, 195, 191 and 197 of the Code of Civil Procedure, and on the jurisprudence of this court and other courts of the United States.

The appellant contends that her allegation "That the defendant has received, knowing that it did not belong to him, the rent for the parcel referred to from September 27, 1923, at the rate of $16.20 per acre yearly, to the prejudice of the plaintiff," is sufficient, and that averment No. 10 of the first cause of action states that the defendant is receiving the rent of the parcel which belongs to the plaintiff and which he did not buy.

This third cause of action deals with the claim for the rent of the parcel of land alleged to belong to the plaintiff, but said to be held and possessed by the defendant as his property without title and knowing that the property is not his.

The cases of *Teillard* v. *Teillard,* 18 P.R.R. 546, and *Salguero* v. *Am. R. R. Co. of P. R.,* 17 P.R.R. 591, are not applicable to this case as supposed by the appellee. The former involved the theory of bad faith as to the acquisition and possession of property in relation to the action of revendication and the latter referred to a company which for some time had been in possession of certain lands in the belief that they belonged to The People of Porto Rico and to a plaintiff claiming compensation because he believed that the said lands belonged to him.

In the cases of *González* v. *Pirazzi,* 23 P.R.R. 370, and *Solá* v. *Castro,* 32 P.R.R. 740, it was held that when it is not shown that the defendant was in possession in bad faith a claim for rents and profits should not be sustained. It was not shown in the former case that the defendants had been in possession in bad faith as a matter of pleading, but by the facts resulting from the evidence. In the latter case

there was a judicial sale the inexistence of which was alleged by the appellant and there was an express declaration of good faith on the part of the defendants in purchasing and possessing the property.

We are of the opinion that as this is a case of a cause of action stated separately, all of the essential facts should be alleged expressly. Such is the jurisprudence.

In this respect the demurrer is well founded.

The fourth assignment of error refers to the judgment in so far as it affects the ambiguity of the first cause of action.

The district court found that the averments Nos. 2 and 3 of the complaint were contradictory and inconsistent and held as follows:

"In averment 2 it is alleged that in April, 1925, the heirs of Braulio Fernández owned and possessed land represented on the accompanying plan marked exhibit No. 1, that is, five parcels of land containing respectively 13.83, 23.13, 3.25, 4.13 and 36.94 acres, and of five gravel patches containing respectively 0.68, 5.28, 3.87, 1.07 and 0.18 acres.

"In averment 3 of the complaint it is alleged that these parcels represented on the aforesaid plan drawn in 1925 in accordance with their titles as follows: and a description is made of 11 parcels containing respectively 29, 3.25, 4, 2.50, ¾, 10.85, 18, 3, 8, 2 and 14 acres respectively.

"A comparison between the areas of the parcels of averment 2 and those of averment 3 of the first cause of action shows a clear conflict or inconsistency justifying the demurrer under subdivision 7 of section 105 of the Code of Civil Procedure on the ground of ambiguity or uncertainty."

There is no doubt that it was the intention of the plaintiff to give as far as possible in detail the past history of those parcels and to make the complaint clearer. We agree with the appellant that probably she could have omitted those antecedents without prejudice to her allegations, since what she is seeking to recover is parcel No. 11, and this most probably could have been done by omitting such antecedents, which may be easily understood by the litigant, but not

perhaps by those who have not the previous data that he has.

We do not think that the allegations in question could greatly mislead the defendant or bring confusion into the mind of the judge in deciding the matter. There is not as between them an important contradiction or uncertainty that might be prejudicial. The action refers to a property which is sufficiently described and it does not seem that its description is seriously affected by any discrepancies in the said allegations. Perhaps this is a case in which application might be made of the provisions of section 142 of the Code of Civil Procedure which reads as follows:

"The court must, in every state of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

The appellant rightly assigns the existence of error in the matter.

The fifth assignment of error is as follows:

"Fifth error.—The court erred in finding that the third cause of action under which fruits and rents were claimed had prescribed."

Considering the manner in which the third assignment as regards the third cause of action has been determined, it is unnecessary to pass on the question of prescription with reference to that cause of action, inasmuch as the first demurrer in regard thereto having been sustained, we can not go into the consideration of prescription for lack of pleading in the complaint.

For the foregoing reasons the judgment appealed from must be reversed as to the ruling on the demurrers on the grounds of misjoinder of actions, misjoinder of parties defendant and ambiguity in the first cause of action, and affirmed as to the rest, the case to be remanded for further proceedings not inconsistent with this opinion.