Adela Gaztambide Viuda de Arrillaga y Otros, demandantes y apelantes, *v.* La Sucesión de Juan Ortiz Pericchi, etc.; Herminio Flores Rodríguez y Aurelio Tió Nazario, demandados y apelados.

Núm. 9541.—*Sometido:* Enero 5, 1948. *Resuelto:* Noviembre 3, 1948.

*Francisco A. Arrillaga, pro se y Antonio Riera, A. Rivas Rosario, R. Trujillo Santiago, Alberto Ferrer, R. Gandía Biscombe y Alberto Picó Santiago,* abogados del coapelante Francisco A. Arrillaga; *Pedro E. Anglade,* abogado de los demás apelantes; *José A. Poventud y Enrique Báez García,* abogados del apelado A. Tió Nazario; *Fernando B. Fornaris y Pablo Juan Toro,* abogados de la Sucesión Ortiz Pericchi; *Amador Ramírez Silva,* abogado del apelado Flores Rodríguez.

El Juez Presidente Interino Señor De Jesús emitió la opinión del tribunal.

Juan Ortiz Pericchi instó procedimiento ejecutivo contra Rafael Arrillaga Urrutia y su esposa Adela Gaztambide en cobro de una hipoteca constituída por ésta a favor de aquél. A virtud de dicho procedimiento el inmueble hipotecado fué adjudicado al acreedor. Éste lo vendió a Herminio Flores y a Aurelio Tió Nazario. Más tarde Flores vendió su condominio a Tió, quien en la actualidad posee todo el inmueble.

Habiendo fallecido Arrillaga Urrutia y Ortiz Pericchi, los apelantes—la viuda e hijos del primero—instaron este pleito contra la sucesión del segundo y contra Flores y Tió, solicitando que se decretase la nulidad del procedimiento ejecutivo y se les resarciese de los daños y perjuicios sufridos por habérseles privado de la posesión del inmueble.

Entre los miembros de la Sucesión demandada se hallan dos hijas naturales de Ortiz Pericchi, llamadas María Antonia Ortiz Vélez y Emilia Ortiz Pimentel las cuales fueron incluídas como demandadas.

Al ser emplazados Flores y Tió, este último solicitó que, tanto Flores como los componentes de la Sucesión demandada, éstos últimos como herederos de Ortiz Pericchi, fuesen citados de evicción. Igual moción presentó Flores con respecto a la indicada Sucesión.

Las dos hijas naturales en su doble carácter de demandadas y de citadas de evicción, se personaron en autos. Emilia Ortiz Pimentel presentó una moción solicitando que se le eliminara de la demanda porque desde el 24 de agosto de 1944 había cedido a la viuda de Ortiz Pericchi todos los derechos que tenía en la herencia de su padre y por esa razón entendía ella que había dejado de ser parte necesaria y legítima en la "acción de nulidad de actuaciones y daños y perjuicios *y de evicción.*" (Bastardillas nuestras.)

María Antonia Ortiz Vélez radicó el 28 de julio de 1945 otra moción similar, en la cual solicitó que la eliminasen como demandada por el mismo fundamento que expuso su hermana Emilia, si bien no mencionó expresamente la citación de evicción. Contestando la demanda alegó que carecía de información y creencia para aceptar o negar sus alegaciones ''y que toda vez que ella traspasó sus derechos . . . e interés cualesquiera que fueran, a favor de doña Monserrate Juan Toro viuda de Ortiz Pericchi, ésta quedó subrogada en los derechos de la alegante, . . . . '' (sic).

En vista de las respectivas mociones de estas demandadas, los demandantes solicitaron de la corte inferior permiso para radicar una demanda enmendada, entre otros motivos, para eliminar de la demanda a las referidas hermanas. El permiso fué concedido por orden de 11 de septiembre de 1945. En consecuencia, se radicó la demanda enmendada en la cual no figuraban ellas. Esta demanda no les fué notificada y desde entonces todas las actuaciones se siguieron entendiendo con los que continuaron como demandados. A moción de éstos la corte inferior dictó sentencia sumaria desestimando la demanda. Apelaron los demandantes. El escrito de apelación no fué notificado a María Antonia y Emilia Ortiz. Los apelados solicitan que se desestime el recurso. Su contención es que habiendo sido María Antonia y Emilia Ortiz citadas de evicción, son partes interesadas en la sentencia, y consecuentemente debieron ser notificadas de la interposición del recurso para que este Tribunal adquiriese jurisdicción.

La cuestión a decidir es si a la luz de los hechos narrados, dichas dos demandadas están comprendidas en el concepto de parte adversa que contempla el artículo 296 del Código de Enjuiciamiento Civil.(¹)

---

(¹)El artículo 296 del Código de Enjuiciamiento Civil dispone:

''Una apelación se interpone entregando al secretario de la corte en que fué dictada o registrada la sentencia o providencia apelada, un escrito manifestando que se apela de ella, o de determinada parte de la misma, y presentando idéntica manifestación a la parte contraria o a su abogado.''

██ La citación de evicción sirve un doble propósito. En lo que al comprador respecta, tiene el efecto de sentar las bases para establecer contra el vendedor la acción de evicción para obtener el saneamiento cuando se priva al comprador por sentencia firme y a virtud de un derecho anterior a la compra, de todo o parte de la cosa comprada.[2] En otras palabras, si no ha habido citación de evicción, no puede el comprador obtener el saneamiento.[3] En cuanto al vendedor concierne, la citación de evicción sirve para darle una oportunidad de defender el título que trasmitió al comprador, ya uniéndosele en la defensa del pleito o bien asumiéndola él solo, para de esa suerte, en el caso de desestimarse la demanda, evitar la acción de evicción que en caso contrario podría el comprador dirigir contra él. Pero el vendedor citado de evicción no viene obligado a litigar. Este es un derecho de su exclusiva incumbencia. Él puede entender que el título es indefendible. Puede que él sea insolvente y en uno u otro caso estime inútil asumir las cargas y molestias que el litigio conlleva. Mas sea cual fuere la causa o la forma de la renuncia a ese derecho, la misma no sería contraria a la ley, el interés o el orden público ni en perjuicio de tercero. Artículo 4 del Código Civil.

██ En el presente caso ya hemos visto que los compradores cumplieron estrictamente el deber de citar de evic-

---

[2] El artículo 1364 del Código Civil, en su primer párrafo, dispone:

"Tendrá lugar la evicción cuando se prive al comprador, por sentencia firme y a virtud de un derecho anterior a la compra, de todo o parte de la cosa comprada."

[3] El artículo 1370 del Código Civil prescribe:

"El vendedor estará obligado al saneamiento que corresponda, siempre que resulte probado que se le notificó la demanda de evicción a instancia del comprador. Faltando la notificación, el vendedor no estará obligado al saneamiento."

El artículo 1371 del Código Civil, en sus párrafos primero y último, dice:

"El comprador demandado solicitará, dentro del término que la ley de enjuiciamiento civil señala para contestar la demanda, que ésta se notifique al vendedor o vendedores en el plazo más breve posible.

"*Si los citados de evicción no comparecieren en tiempo y forma, continuará, respecto del comprador, el término para contestar a la demanda.*" (Bastardillas nuestras.)

ción que les imponen los artículos 1370 y 1371 del Código Civil. Pero María Antonia y Emilia Ortiz, como herederas del vendedor, no tuvieron a bien defender el título. Por el contrario, presentaron las mociones antes mencionadas pidiendo a la corte que ordenase su eliminación de la demanda por entender ellas que no tenían responsabilidad alguna en el caso, ya que habían cedido a la viuda de Ortiz Pericchi todos sus derechos o interés en la herencia de su padre. Es verdad que la demanda enmendada no les fué notificada. ¿Qué finalidad se perseguía con notificárselas, cuando ya ellas se habían apartado del pleito y optado por no defender el título que había transmitido su causante?

A este efecto preceptúa el último párrafo del artículo 1371 del Código Civil que ''si los citados de evicción no comparecieren en tiempo y forma, continuará, respecto del comprador, el término para contestar a la demanda.'' Manresa, comentando el mismo párrafo del artículo correspondiente del Código Civil Español, dice:

''Si el vendedor no comparece *en tiempo y forma,* continuará, respecto del comprador, el término para contestar la demanda; *las actuaciones se seguirán entendiendo con él,* [el comprador] pero llegado el caso de evicción tendrá derecho al saneamiento.'' Comentarios al Código Civil Español, t. 10 (2da. ed. 1908) pág. 217. (Bastardillas nuestras.)

Podría argüirse que dichas hermanas comparecieron ''en tiempo''. Empero, no lo hicieron ''en forma''. Su comparecencia, lejos de ir enderezada a defender el título de los compradores, fué encaminada a solicitar que se les eliminase del pleito por entender ellas que no tenían responsabilidad legal alguna. Así pues, el pleito continuó desde ese instante contra los que en la demanda enmendada figuraban como demandados, entendiéndose con ellos todas las ulteriores actuaciones.

Como fácilmente se desprende de los artículos del Código Civil antes citados, la posición del vendedor citado de evic-

ción es *sui generis*. Si no comparece, no puede anotársele la rebeldía, sencillamente porque no tiene carácter de demandado ni se solicita remedio alguno contra él dentro del pleito. Solamente se le invita a intervenir mediante la citación de evicción como una medida preparatoria para que el comprador tenga derecho a obtener el saneamiento en caso de evicción. Si por el contrario comparece a defender el título, tampoco se convierte en demandado, pues su actuación se circunscribe a defender el título del comprador. Como dice Manresa, "al comparecer el vendedor o los vendedores notificados, no se convierten por ello en demandados. El demandado será siempre el comprador, pero con él litigarán aquél o aquéllos coadyuvando a su defensa. Se aumenta sólo el número de litigantes". Ob., t. y pág. cit. Claro es que si el vendedor comparece y defiende su título, si bien no se convierte por ello en demandado,(⁴) tiene interés en el resultado de la sentencia, pues en caso de ser adversa al comprador surgirá contra el vendedor el derecho a obtener el saneamiento mediante la acción de evicción. Pero estas demandadas, después de citadas de evicción, voluntariamente optaron por retirarse del pleito, renunciando así al derecho que tenían a defender el título de los demandados. Desde entonces dejaron de ser partes interesadas. En consecuencia, no tenían derecho a ser notificadas de la interposición del recurso.

No puede argüirse que al pedir María Antonia Ortiz su eliminación como demandada y guardar silencio con respecto a su responsabilidad para el caso de evicción, no, renunció al derecho que pudiera tener a ser nuevamente citada de evicción notificándosele con copia de la demanda enmendada. Esto es así porque su responsabilidad como demandada en el pleito de nulidad de actuaciones surge de su condición de

---

(⁴)No hemos perdido de vista las disposiciones de la Regla 20(a) de Enjuiciamiento Civil.

heredera del vendedor, y precisamente por ser ella heredera del vendedor fué que se le citó de evicción por los que compraron la finca a su padre Ortiz Pericchi. Por consiguiente, negando ella toda responsabilidad como heredera fundándose en que había cedido todos sus derechos en la herencia a la viuda de Ortiz Pericchi, equivale a negar también toda responsabilidad por concepto de saneamiento en caso de evicción. Ella no puede dejar de ser heredera cuando la demanda la Sucesión de Rafael Arrillaga Urrutia y continuar siéndolo cuando es citada de evicción por los demandados Flores y Tió. Por esa razón opinamos que la posición legal de María Antonia Ortiz es exactamente igual a la de su hermana Emilia Ortiz.

Concedemos que en el caso de *Batlle* v. *Torruellas*, 39 D.P.R. 205, invocado por los apelados, se dijo:

"Vese fácilmente que la relación que se crea en el saneamiento en caso de evicción es, en la realidad, una entre el comprador y el vendedor, y que no tiene gran importancia para el demandante la cuestión de quién va a defender el título. Pero es inevitable la consecuencia jurídica de que el citado en evicción tiene interés en el pleito, ya que sus responsabilidades, si acaso tuviera razón la demandante y apelante, van a recaer sobre él. Es una parte, y una parte adversa al demandante." (pág. 212.)

Sin embargo, no podemos convenir con los apelados en que el párrafo que acabamos de transcribir sea decisivo del presente caso. Aparte de que se trata de un *obiter dictum* como veremos más adelante, no debemos perder de vista que el lenguaje de una decisión judicial debe interpretarse a la luz de los hechos del caso en que fué usado. Guiados por este principio, pasaremos a denotar la diferencia fundamental entre los hechos de aquél y los del presente caso. En el de *Batlle,* supra, contrario a lo que sucedió en el de autos, el vendedor citado de evicción compareció "en tiempo y forma" interponiendo una excepción previa a la demanda. La excepción prosperó. A instancia de los demandantes se

dictó sentencia con el fin de poder obtener la revisión de la resolución recaída. Apelaron entonces los demandantes. Los demandados solicitaron la desestimación fundándose en que el citado de evicción no había sido notificado del recurso.[5]

En cambio, en el caso de autos ya hemos visto que las hermanas citadas de evicción no comparecieron a defender el título que trasmitió su padre, y optaron por no convertirse en litigantes. Pero, cuando como en el caso de *Batlle* el citado de evicción comparece a defender el título usando del derecho que le concede la ley, y se dicta sentencia, ya sea a favor o en contra del demandado, forzoso es reconocer que él tiene un interés en el resultado de la sentencia que pueda dictarse en apelación. Sería una inconsistencia de la ley permitirle litigar en la corte de instancia y luego cerrarle las puertas de la corte de apelación al apelarse de la sentencia. Mas ese interés en la sentencia que existía en el caso de *Batlle,* no aparece en el de autos, y consideradas las circunstancias concurrentes, somos de opinión que María Antonia y Emilia Ortiz no están comprendidas dentro del concepto de parte adversa que contempla el artículo 296 del Código de Enjuiciamiento Civil.

*No procede la desestimación.*

---

[5] Este Tribunal resolvió, sin embargo, que si bien del escrito de apelación no aparecía la constancia de la notificación, ésta se había probado mediante otra evidencia. Toda vez que el citado de evicción fué realmente notificado del recurso, no cabe duda que el lenguaje antes citado era innecesario para la resolución del caso y en consecuencia fué un *obiter dictum.* Empero, teniendo en cuenta que el citado de evicción compareció a defender el título, dicho lenguaje es una correcta exposición de la ley.